**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | | PLAINTIFF |
| v. | NO. 4:07CR00103 JLH | |
| BARRY J. JEWELL | | DEFENDANT |

* * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | | PLAINTIFF |
| v. | NO. 4:07CV00451 JLH | |
| $158,428.46 IN UNITED STATES CURRENCY | | DEFENDANT |

**OPINION AND ORDER**

This Opinion and Order is entered in two companion cases, one of which is a criminal case brought by the United States against Barry Jewell seeking, among other things, forfeiture of funds from three retirement accounts, and the other of which is a civil forfeiture case regarding the same funds. In the criminal case, the government sought and obtained a protective order providing that the funds, which were previously seized and placed in the Treasury Suspense Fund, should remain in the Treasury Suspense Fund until this matter is concluded. Jewell has now filed a motion to vacate that order and for return of the funds. He also asks the Court to strike a lis pendens that the government has filed against his residence. In the civil case, Jewell has filed a motion for summary judgment on his claim for the funds. In both cases, Jewell contends that the funds are protected from seizure by 29 U.S.C. § 1056(d)(1). The Court heard argument on this issue in both cases during a joint hearing. The Court has concluded that section 1056(d) protects the funds from forfeiture. Therefore, Jewell's motion to vacate the protective order in the criminal case and for the return of

the funds in the Treasury Suspense Fund is granted. His summary judgment motion in the civil case is also granted. Jewell's motion to strike the lis pendens is denied.

**I.**

Barry Jewell is a lawyer who practiced for several years with Bobby Keith Moser. In 2004, Moser was charged with a variety of offenses in three separate criminal cases. The charges included mail fraud, wire fraud, money laundering, conspiracy to commit mail and wire fraud, and conspiracy to commit money laundering. On May 11, 2005, Moser was sentenced to 188 months on seven counts, 120 months on three counts, and 60 months on eight counts, all to run concurrently.

On June 12, 2006, as a part of the post-conviction forfeiture proceeding in one of the criminal cases against Moser, the United States asked for and obtained a seizure warrant authorizing the seizure of $38,815 from the Jewell Law Firm Pension Trust, $44,819.46 from the Legal Advantage Retirement Trust, and $74,793.29 from the Jewell Law Firm Retirement Trust on the ground that there was probable cause to believe that those funds were directly traceable to the proceeds of Moser's crimes. Those funds were placed in the Treasury Suspense Fund. The government then moved for an amended order of forfeiture to include those funds in the funds to be forfeited by Moser. Jewell filed a petition opposing the forfeiture, and litigation between him and the United States ensued in Moser's criminal case. However, before the forfeiture issue could be decided in Moser's criminal case, the United States commenced the two cases in which this opinion and order is being entered.

On April 4, 2007, Jewell was indicted on charges of conspiring with Moser to commit mail fraud, on charges of money laundering, and on charges of tax evasion. The indictment alleges that Jewell obtained proceeds from the conspiracy to commit mail fraud and transferred those funds to

various accounts under his control. Specifically, the indictment alleges that on June 3, 2005, Jewell transferred $44,585.70 from the Legal Advantage, Inc. Retirement Trust account at Charles Schwab, Little Rock, Arkansas, to the Legal Advantage, Inc. Retirement Trust account at Metropolitan National Bank, Little Rock, Arkansas; on July 27, 2005, Jewell transferred $75,000 from the Jewell Law Firm, P.A. account at the Bank of Ozarks, Little Rock, Arkansas, to the Jewell Law Firm, P.A. Retirement Trust account at Metropolitan National Bank, Little Rock, Arkansas; and on July 7, 2005, Jewell transferred $47,598.70 from the Jewell Law Firm, P.A. Pension Trust account at Charles Schwab, Little Rock, Arkansas, to the Jewell Law Firm, P.A. Pension Trust account at Metropolitan National Bank, Little Rock, Arkansas. The indictment seeks forfeiture of these funds, as well as $1,811,490.20 representing the proceeds obtained as a result of the conspiracy to commit mail fraud. As a part of the latter forfeiture allegation, the United States seeks forfeiture of Jewell's residence as substitute property.

On April 23, 2007, the government submitted an application for a protective order pursuant to 18 U.S.C. § 982(a)(1) and (b)(1) and 21 U.S.C. § 853(e) allowing the United States to maintain the money in the Treasury Suspense Fund until this matter is adjudicated. The protective order was entered the following day.

On April 26, 2007, the United States filed the civil complaint seeking civil forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) of $44,819.46 seized from the Legal Advantage Retirement Trust account, $74,793.29 seized from the Jewell Law Firm, P.A. Retirement Trust account, and $38,815.71 seized from the Jewell Law Firm, P.A. Trust account. Although there are minor differences in the amounts described in the indictment as compared to the complaint, it appears that these are in fact the same funds. From the affidavit of Special Agent Don Elliott of the Internal

Revenue Service, it appears that the amounts used in the civil complaint represent the amounts actually seized. In the civil case, Jewell filed a claim individually and as trustee of the three accounts.

As noted above, in the criminal case Jewell has filed a motion to vacate the protective order and for return of the funds from the Treasury Suspense Fund, and in the civil case he has filed a motion for summary judgment.

In both the civil and criminal cases, Jewell argues that the funds at issue are protected from forfeiture by 29 U.S.C. § 1056(d)(1), which provides, "Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated." Although the pension plans at issue have not been provided to the Court, the parties apparently agree that they comply with section 1056(d)(1). Jewell has provided letters from the Internal Revenue Service for each of the three pension plans. Each letter says, "We have made a favorable determination on the plan . . . based on the information you have supplied." Because the Internal Revenue Code provides in 26 U.S.C. § 401(a)(13)(A) that a trust shall not constitute a qualified trust unless the plan provides that benefits may not be assigned or alienated, the fact that the Internal Revenue Service made a favorable determination on all three plans is presumptive evidence that all three plans contain the prohibition on alienation or assignment required by section 1056(d)(1).

In response to the motion for summary judgment, the United States notes that the favorable determination letters from the Internal Revenue Service stated, "Continued qualification of the plan under its present form will depend on its effect in operation." The United States requested the opportunity to take discovery to determine whether the plans were operated in accordance with the applicable rules and regulations, and the Court entered an order permitting the United States to

conduct discovery on that issue. As a part of the discovery on that issue, the United States deposed Jewell. In response to nearly every substantive question, Jewell refused to answer on the ground the question went beyond the scope of discovery as permitted by the order and because the question infringed on his privilege under the Fifth Amendment. Thereafter, the United States moved to dismiss Jewell's motion for summary judgment and to strike the evidence he submitted because he cannot simultaneously present an affidavit, which he has done, and then invoke the Fifth Amendment privilege when deposed. *See United States v. U.S. Currency in the Sum of $185,000*, 455 F. Supp. 2d 145, 150-51 (E.D.N.Y. 2006) (claimant is entitled to assert the Fifth Amendment in a civil forfeiture case, but he bears the consequences of failing to adduce evidence sufficient to oppose government's motion for summary judgment; claimant who asserts Fifth Amendment at his deposition cannot submit an affidavit to create a material issue of fact); *United States v. One 1991 Chevrolet Corvette*, 390 F. Supp. 2d 1059, 1063-64 (S.D. Ala. 2005) (striking claimant's discovery responses showing he had legitimate income when he invoked his Fifth Amendment privilege and refused to produce documents); *United States v. $61,443.04 U.S. Currency*, 818 F. Supp. 135, 138 (E.D.N.C. 1993), *vacated on other grounds*, *United States v. Taylor*, 13 F.3d 786 (4th Cir. 1994) (claimant who asserts Fifth Amendment rights to avoid deposition cannot submit affidavits to create material issues of fact in opposition to motion for summary judgment); *United States v. $433,980 in U.S. Currency*, 473 F. Supp. 2d 685, 691-92 (E.D.N.C. 2007) (claimant cannot "manufactur[e] a genuine issue of material fact" by asserting that he obtained seized currency lawfully but then invoking the Fifth Amendment whenever questioned on the issue).

**II.**

In *Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 493 U.S. 365, 110 S. Ct. 680, 107 L. Ed. 2d 782 (1990), the Supreme Court found no exception to the anti-alienation provision of section 1056(d)(1) even though the defendant in that case had pled guilty to embezzling funds from the union of which he had been chief executive officer for seventeen years. The Court held that it would be inappropriate to approve of any generalized equitable exception, either for employee malfeasance or for criminal misconduct, to ERISA's prohibition on the assignment or alienation of pension funds. *Id.* at 376, 110 S. Ct. at 687. Recognizing that "there may be a natural distaste for the result we reach here," the Court nevertheless held that any exception should be created by Congress, not by the courts. *Id.* at 377, 110 S. Ct. at 687-88.

Here, the United States first argued that section 1056(d)(1) does not preclude forfeiture when the funds were placed into the retirement account as a means of committing money laundering. However, the United States has cited no case recognizing that argument, and it appears to be inconsistent with *Guidry*'s conclusion that any exceptions to section 1056(d)(1) must be created by Congress, not by the courts. Furthermore, in *United States v. All Funds Distributed to or on Behalf of Weiss*, 345 F.3d 49 (2d Cir. 2003), the court recognized that the government may not seize funds in an ERISA pension plan even if the act of depositing the funds constituted money laundering. *Id.* at 57.

The second argument made by the United States is that a favorable determination letter indicates that the plan document conforms to the requirement of section 401(a) of the Internal Revenue Code, but that to be a qualified plan under section 401(a) a plan must satisfy, in both form and operation, the requirements of that section, including the nondiscrimination in coverage

requirements. Therefore, the United States argues, Jewell must show that all three plans were operated in conformity with section 401(a) of the Internal Revenue Code before he can obtain the protection of section 1056(d)(1). Jewell has submitted no evidence on that point and refused to answer questions aimed at conducting discovery on that issue. Furthermore, the United States has submitted an affidavit from Janice Smith, an agent of the Internal Revenue Service, stating that the three plans are undergoing a process that may result in them being disqualified.

The difficulty with the argument made by the United States is that it confuses the requirements of ERISA with the prerequisites for achieving tax qualification for an ERISA plan. In *In re Baker*, 114 F.3d 636 (7th Cir. 1997), the court held that section 541(c)(2) of the Bankruptcy Code excluded the funds in Jerome Baker's pension account from his bankruptcy estate even though he had been a trustee of the plan and had repeatedly violated the plan's terms. *Id*. at 639-40. In that context, the Court stated:

> What is an "ERISA-qualified" plan? The term does not appear in the statute, and its provenance is mysterious. Some plans are *tax*-qualified, a term of art meaning that contributions to the plan are deductible at the corporate level and not taxed to the employee until the plan distributes benefits. Taxation has nothing to do with the question at hand, however.

*Id*. at 638. Likewise, the Fifth Circuit has said:

> Nowhere in ERISA . . . is there a requirement that, to be an ERISA plan and thus be governed by ERISA, a plan must be tax qualified. Indeed, the converse is true: An ERISA plan that is not or may not be tax-qualified nevertheless continues to be governed by ERISA for essentially every other purpose. It would be perverse, indeed, if the negligent or intentional act of an ERISA plan sponsor, administrator, or other fiduciary, that results in disqualification for tax purposes could, *ipso facto*, remove the plan – and thus the beneficial interests of the employee/participants – from the aegis of ERISA and its protection of the very interests for which the legislation was adopted and is administered in parallel by the Treasury and Labor Departments.

*In re Sewell*, 180 F.3d 707, 711 (5th Cir. 1999).

Although the issue in *Baker* and in *Sewell* was whether a debtor's interest in a pension plan was part of the bankruptcy estate, the reasoning of those two cases was that funds held in a pension or retirement account of an ERISA plan containing the anti-alienability provision required by section 1056(d)(1) is beyond the reach of creditors even if the plan lacks or loses the benefits provided to tax-qualified plans under the Internal Revenue Code. By that reasoning, the funds in the three retirement accounts are protected from seizure even though the Court must and does accept the grand jury's finding of probable cause on the issue of Jewell's guilt and on the issue of whether the funds are proceeds of the conspiracy to commit mail fraud. *See United States v. Jones*, 160 F.3d 641, 644-45 (10th Cir. 1998). Even if the funds are proceeds of a crime, they are not subject to forfeiture. *Cf. United States v. Smith*, 47 F.3d 681 (4th Cir. 1995) (holding that a restitution order in a criminal case cannot require a defendant to turn over his pension benefits in a lump sum nor as they are paid to him); *United States v. Norton*, 2002 WL 31039138 (W.D. Va., Sept. 3, 2002) (holding that pension plan benefits are not subject to forfeiture as substitute property); *United States v. Parise*, 1997 WL 431009 (E.D. Pa., July 15, 1997) (denying a preliminary order of forfeiture of pension benefits even though the funds to be recovered were lost by the pension fund, itself, due to the defendant's breach of fiduciary duties).

The government cites *In re Plunk*, 481 F.3d 302 (5th Cir. 2007), for the proposition that the Court can and should receive evidence on the issue of whether disqualifying events occurred after the Internal Revenue Service had last determined that a plan is qualified. However, that case interpreted a Texas statute that exempts a pension plan from attachment, execution, or other seizure if the plan is qualified under the Internal Revenue Code. *Id.* at 304. As the Seventh Circuit held in *Baker* and the Fifth Circuit in *Sewell*, the anti-alienation provision of section 1056(d)(1) does not

depend on whether a plan is qualified under the Internal Revenue Code, which was the issue in *Plunk*. For that reason, *Plunk* is not on point.

In summary, 29 U.S.C. § 1056(d)(1) requires that each pension plan state that benefits provided under the plan may not be assigned or alienated. Likewise, 26 U.S.C. § 401(a)(13)(A) requires that a tax-qualified plan must include a provision stating that benefits under the plan may not be assigned or alienated. Because the Internal Revenue Service issued a favorable determination letter finding that the three plans at issue here met the requirements of 26 U.S.C. § 401(a), and because the parties have not argued or introduced evidence to the contrary, it appears undisputed that these three plans contain the anti-alienability provisions required by section 1056(d)(1). Even if the Court struck Jewell's affidavit, the favorable determination letters are in the record as is other evidence that the Internal Revenue Service issued the favorable determination letters. The affidavits of Janice Smith, revenue agent for the IRS, show that favorable determination letters have been issued. Thus, again, even without Jewell's affidavit, the undisputed evidence shows that the three retirement accounts are protected by section 1056(d)(1). That section provides no exceptions for inequitable or criminal misconduct. A beneficiary of a plan does not lose the protection against assignment or alienation because the plan loses its status as a tax-qualified plan under 26 U.S.C. § 401(a). Therefore, whether these three plans were operated in conformity with the requirements of section 401(a) is irrelevant, and whether the Internal Revenue Service may in the future revoke one or more of the three favorable determination letters is irrelevant. Thus, the discovery that the government sought to obtain in Jewell's deposition is irrelevant. This Court erred in permitting discovery on the issue of whether the plans were operated in conformity with 26 U.S.C. § 401(a) because the anti-alienability protection of section 1056(d)(1) does not depend on whether the plan

is operated in conformity with the requirements for a tax-qualified plan under the Internal Revenue Code.

This Court erred when it issued the protective order pursuant to 18 U.S.C. § 982(a)(1) and (b)(1) and 21 U.S.C. § 853(e).  Jewell's motion in the criminal case to vacate the protective order and for return of funds from the Treasury Suspense Fund is granted.  Jewell's motion for summary judgment in the civil case is granted.

### III.

Jewell's motion in the criminal case included a request that the Court strike the lis pendens filed by the government with respect to his residence.  On that issue, Jewell argues that his residence is a substitute asset that may not be restrained prior to conviction under 21 U.S.C. § 853(e).  Jewell cites *United States v. Poulsen*, 2007 WL 682433 (S.D. Ohio, Feb. 28, 2007), where the court ordered the government to remove a lis pendens against a property on the ground that a substitute asset may not be restrained, by a lis pendens filing or otherwise, prior to a conviction.  In contrast, in *United States v. Register*, 182 F.3d 820 (11th Cir. 1999), the court held that the filing of a lis pendens does not constitute a seizure and does not affect property interests to an extent significant enough to implicate the due process clause of the Fifth Amendment.  *Id*. at 837.  In so holding, the Eleventh Circuit adopted the reasoning of *Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1, 104 S. Ct. 2187, 81 L. Ed. 2d 1 (1984), where the Supreme Court held that the filing of a notice of lis pendens does not interfere with an owner's legal right to dispose of his land, even though it may reduce the land's marketability.  *Id*. at 836-37 (citing *Kirby*, 467 U.S. at 15, 104 S. Ct. at 2197).  The Eleventh Circuit in *Register* also noted *United States v. James Daniel Good Real Property*, 510 U.S. 43, 58-59, 114 S. Ct. 492, 503-04, 126 L. Ed. 2d 490 (1993), where the Court held that ex parte seizure of

real property violates due process but said in dicta that the government can preserve its legitimate interests by using less restrictive means such as filing a notice of lis pendens. *See id.* at 836 (citing *James Daniel*, 510 U.S. at 54, 114 S. Ct. at 501).

In *United States v. Field*, 867 F. Supp. 869 (D. Minn. 1994), the court held that substitute assets could not be restrained prior to conviction under 21 U.S.C. § 853(e). *Id.* at 873. The substitute assets at issue were real property. The court observed in a footnote that its decision did not restrict the government's ability to file a lis pendens notice against any real property that may be subject to forfeiture. *Id.* at 873 n.4.

Although the notice of lis pendens has not been provided to the Court, apparently it was filed pursuant to Ark. Code Ann. § 16-59-101 et seq. Section 16-59-101 provides that, for the filing of a suit in either a state court or a United States district court affecting the title of any real estate in order to constitute constructive notice to a bona fide purchaser or mortgagee of any such real estate, it is necessary to file a notice of the pendency of the suit with the recorder of deeds of the county in which the property to be affected by the constructive notice is situated. Thus, the filing of a notice of lis pendens gives constructive notice to a bona fide purchaser or mortgagee of the pendency of the suit; it provides no legal restraint. In this case, the owner of the property is a family trust the co-trustees of which are Barry Jewell and Heather Jewell. The notice of lis pendens does not prohibit the Jewells from selling the property, nor does it interfere with their use and enjoyment of the property. The notice of lis pendens is not a seizure or a legal restraint; it is only a constructive notice to potential purchasers and mortgagees of the fact that the government seeks forfeiture of the property. It is of course true that a prospective buyer or mortgagee who knows that the government is seeking forfeiture of the property is unlikely to engage in the transaction, but that fact does not

mean that the government is prohibited from giving notice, constructive or otherwise, of its claim. The motion to strike the notice of lis pendens is denied.

## CONCLUSION

In Case No. 4:07CR00103, Barry Jewell's motion to vacate the protective order is granted in part and denied in part. Document #20. The protective order entered on April 24, 2007, is hereby vacated. Document #7. The motion to strike the lis pendens is denied.

In Case No. 4:07CV00451, Jewell's motion for summary judgment is granted. Document #6. The government's motion to dismiss claimant's motion for summary judgment and the government's motion to strike all evidence submitted by the claimant are denied. Documents #19, #21.

The government is hereby ordered to return the funds seized from the Legal Advantage, Inc. Retirement Trust account at Metropolitan National Bank to that account, the funds seized from the Jewell Law Firm, P.A. Retirement Trust account at Metropolitan National Bank to that account, and the funds seized from the Jewell Law Firm, P.A. Pension Trust account at Metropolitan National Bank to that account.

IT IS SO ORDERED this 6th day of March, 2008.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE